UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LADDAWN, INC. et al,<br><br>               Plaintiff,<br>v.<br><br>MARC D. BOLDUC,<br><br>               Defendant. | CIVIL ACTION<br>17-cv-11044-TSH |

**REPORT AND RECOMMENDATION**

**December 27, 2018**

Hennessy, M.J.

    I.      Background

Defendant Marc D. Bolduc ("Bolduc") was an employee of Plaintiff Laddawn, Inc. ("Laddawn") from July 1999 through April 2015. (Docket # 1, ¶¶ 7, 36). Laddawn and Ladd Lavallee ("Lavallee") ("Plaintiffs") allege a number of well-supported deficiencies in Bolduc's performance, including refusing to document or train others in the intricacies of his work, resistance to working conventional hours on-site, and difficulty working with others. Id. ¶¶ 8-16.

Plaintiffs also allege instances of misconduct, including one on April 22, 2014 when Bolduc was reprimanded for sending a coworker "upsetting" and insensitive emails. Id. ¶ 17. As a result of Bolduc's behavior, Bolduc was directed in April 2014 to take time off and to seek counseling to address emotional issues. Id. ¶ 18. Plaintiffs contend that Bolduc was informed that his return to work was conditioned on Bolduc signing a release form permitting his counselor to advise Laddawn of his progress and obtaining a note from his counselor clearing him to return to work. Id. Upon Bolduc's return to work, his behavior continued to be

unprofessional, with written reprimands for unprofessional behavior issuing on June 17, 2014 and again on November 11, 2014.  Id. ¶ 19.

Following a number of emails from Bolduc to coworkers that Plaintiffs have described as "inappropriate, unprofessional and accusatory in tone," and an incident in which Bolduc displayed to a coworker a gun he had brought to the workplace, Bolduc was informed that he would not be permitted to remain an employee of Laddawn, that he would be permitted to remain short-term upon his assurances that he would assist with the proper transition of his job duties, and that Laddawn would prepare a separation agreement and independent contractor agreement to take effect following the termination of his employment.  Id. ¶¶ 21-36.

Bolduc indicated that he was not interested in the independent contractor arrangement offered by Laddawn, and refused to speak with his supervisor or Lavallee.  Id. ¶¶ 41-43. Lavallee responded by directing Laddawn's Information Technology department ("IT") to terminate Bolduc's remote access to Laddawn's systems.  Id. ¶ 44.  Lavallee called Bolduc the following day to inform Bolduc that Laddawn's IT could not access critical backups without the passcodes that Bolduc had created.  Id. ¶ 45.  Bolduc refused to provide the passcodes.  Id. Plaintiffs allege that after a number of inflammatory emails sent by Bolduc to Lavallee and employees of Laddawn, Lavallee asked Bolduc to cease email communications with Laddawn employees.  Id. ¶ 46.  Over the course of the next year, Bolduc continued to communicate with Lavallee by email.  Id. ¶¶ 47-51.

Plaintiffs allege that after the termination of his employment, Bolduc registered the following domain names: Laddawn.co, Laddawn.biz, Laddawn.org, Laddawn.mobu, Laddawn.info, Laddawn.online, Laddawn.us, and Ladd-dawn.com without permission from Laddawn, the trademark holder.  Id. ¶¶ 56-67.  Bolduc has offered the registered domains for

sale by auction through his website, dumplingrock.com.[1]  Id. ¶ 70.  Laddawn demanded by letter on May 26, 2016 that Bolduc transfer ownership of the domain names to Laddawn.  Id. ¶ 85.  Bolduc refused to transfer ownership of the domain names, instead offering to negotiate their sale.  Id. ¶¶ 86-87.

Plaintiffs allege that on May 1, 2017, Bolduc created a public post on Facebook describing Lavallee as a "criminal".  Id. ¶ 89.  Plaintiffs further claim that on May 5, 2017, Bolduc created a Facebook post referring to Lavallee as a "crime-boss" and accusing Lavallee of "sharing" Bolduc's HIPAA information.  Id. ¶¶ 91, 93.

In his counterclaim, Bolduc asserts that in May 2015, Lavallee charged that, by withholding administrative passwords, Bolduc maliciously compromised the Laddawn IT network and electronic assets.  (Docket # 57, ¶ 1).  Bolduc claims that an email sent by Lavallee to Laddawn Human Resources Manager Hanam stated that "Marc's ultimate refusal to turn over key administrative passcodes only validated these worries."  Id. ¶ 4.  Bolduc alleges that on May 24, 2016, Lavallee sent a company-wide email accusing Bolduc of making threats against individuals and the company, and of contacting the Customer Service department under a fictitious name in an attempt to obtain information about the Laddawn domain names and infrastructure.  Id. ¶¶ 2, 3.  Bolduc claims that Lavallee made all of these statements knowing that they were false, that they would be shared publicly, that they would damage Bolduc's reputation and Bolduc's new business.  Id. ¶ 5.

---

[1] Plaintiffs assert that Dumpling Rock is the name of another business venture by Lavallee and Dawn Seiple, cofounder of Laddawn.  Id. ¶ 50.

II.     Procedural Posture

On June 7, 2017, Plaintiffs filed a complaint in the instant action seeking damages for trademark infringement and libel against Bolduc.  (Docket # 1).  Bolduc filed his answer to the Plaintiffs' complaint on June 28, 2017.  (Docket # 15).

Plaintiffs filed a motion for judgment on the pleadings on July 19, 2017.  (Docket # 17).  Plaintiffs' motion for judgment on the pleadings was denied without prejudice and on January 19, 2018 the Court granted Bolduc leave to amend his answer and to file a counterclaim. (Docket ## 36, 37, 38).  Bolduc's amended answer was filed on January 31, 2018.  (Docket # 40).  Bolduc filed a motion to dismiss and a motion for change of venue on February 9, 2018, both of which were denied on April 20, 2018.  (Docket ## 41, 42, 43, 44).  Bolduc filed a motion for judgment on the pleadings on March 29, 2018 which was denied on June 8, 2018.  (Docket ## 47, 51).

At a scheduling conference on July 31, 2018, the Court issued a scheduling order requiring completion of discovery by January 1, 2019 and providing a dispositive motion deadline of February 1, 2019.  (Docket ## 54, 55).  On August 6, 2018, Bolduc filed a motion to disqualify Plaintiffs' counsel.  (Docket # 56).  A hearing was held on the motion on August 22, 2018, and the motion was denied August 24, 2018.  (Docket ## 61, 62).

On August 8, 2018, Bolduc filed his counterclaim against Laddawn and Lavallee for defamation.  (Docket # 57).  Bolduc's counterclaim was nearly identical to a complaint Bolduc filed against Laddawn, Lavallee, and Seiple in Massachusetts Superior Court on January 31, 2018, alleging claims of defamation/libel, breach of contract, civil assault/harassment, and intentional interference with advantageous relations.  Plaintiffs filed a motion to dismiss Bolduc's counterclaim on August 24, 2018, seeking dismissal of the counterclaim based upon

the prior pending action doctrine.  (Docket ## 63, 64).  Bolduc opposed the Plaintiffs' motion to dismiss his counterclaim on September 11, 2018.  (Docket #67).  Judge Hillman referred Plaintiffs' motion to dismiss Bolduc's counterclaim to me for report and recommendation. (Docket # 74).

   III.   Analysis

Plaintiffs move the Court to dismiss Bolduc's counterclaim based upon the prior pending action doctrine. The prior pending action doctrine stands for the proposition that "the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." O'Reilly v. Curtis Pub. Co., 31 F. Supp. 364, 364-65 (D. Mass. 1940).  Generally, the case filed first should have priority "absent the showing of balance of convenience in favor of the second action." Bradeen, et al. v. Bank of New York Mellon, N.A. et al., No. 18-CV-11753, 2018 WL 5792319, at *1 (D. Mass. Nov. 2, 2018) (quoting Adam v. Jacobs, 950 F.2d 89, 93-94 (2d Cir. 1991)).  The doctrine is animated by concerns about judicial efficiency and the prospect of inconsistent judgments.  Id. A court may stay or dismiss a later-filed action where: "(1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action." Id. at *2 (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360, at 89 (3d ed. 2004)). The parties to the actions do not necessarily need to be identical, however they must share a "sufficient congruence of interests".  Id. (citing Whitten Ranch, Inc. v. Premier Alfalfa, Inc., 2009 WL 1844482, at *2 (D. Neb. June 18, 2009); Andy Stroud, Inc. v. Brown, 2009 WL 539863, at *10 (S.D.N.Y. Mar. 4, 2009); Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc., 697 F. Supp. 2d 1042, 1049 (N.D. Iowa 2010)).

Plaintiffs move the Court to dismiss Bolduc's counterclaim on the basis that it was filed after Bolduc filed the similar action in Massachusetts Superior Court.  Plaintiffs claim that allowing both actions to proceed would be unduly burdensome, contrary to policies favoring judicial economy, and could lead to conflicting judgments. There is merit to these arguments.  However, Plaintiffs' proposed remedy of dismissal of Bolduc's counterclaim in the current action does not follow.

Plaintiffs' argument in support of dismissal depends on a novel and particularly self-serving interpretation of "action" as that term is used in "prior pending action."  In their view, "action" refers to the legal proceedings that flow from Bolduc's counterclaim filed in the instant federal case, as opposed to the legal proceedings that commenced with Plaintiffs' filing of a complaint in the federal case.  On this basis, they posit that since Bolduc's counterclaim in the instant case was filed after he sued Plaintiffs in Massachusetts Superior Court, the Superior Court action has priority and the counterclaim constitutes the later suit, subject to abatement under the prior pending action doctrine.

This construct suffers from a number of flaws.  First, Plaintiffs cite no law for their narrow interpretation of "action," and this Court could find no case with sufficiently analogous facts to support Plaintiffs' interpretation.  Perhaps the closest was Judge Hillman's decision in Qutab v. Kyani, Inc., 324 F. Supp. 3d 243 (D. Mass, 2018).  Pursuant to a written agreement, Qutab agreed to distribute Kyani's nutritional products. Id. at 244.  In September 2017, Kyani terminated the arrangement, triggering a requirement that Kyani make three payments to Qutab of $25,000 each. Id. at 245.  When Kyani failed to make more than one payment, Qutab sent a letter in late September 2017 alleging breach of contract and requesting relief ("Demand Letter"). Id.  In November 2017, Kyani brought suit against Qutab in Idaho state court, and on

6

December 19, 2017 amended the complaint to allege claims of false designation of origin, unfair competition, defamation and other claims, all arising from the contract to distribute.  Id.  On December 28, 2017, Qutab filed a complaint in this Court alleging breach of contract and other claims also arising from the contract to distribute.  Id.

Kyani moved in this Court to dismiss the federal action under the prior pending action doctrine arguing that its suit in Idaho state court had chronological priority.  Id.  Qutab responded that he was the first to file suit, asserting that the Demand Letter, which contained a prayer for relief, initiated the federal suit.  Id. at 246.  Judge Hillman rejected Qutab's characterization of the Demand Letter as commencing the federal suit, citing Massachusetts Rule of Civil Procedure 3 that provides that a civil action is commenced by filing a complaint.  Id. (citing Mass. R. Civ. P. 3).

To be sure, a demand letter is different from a counterclaim.  But for the purposes of the instant motion, they share a common characteristic: under the controlling rules of civil procedure neither is a complaint and only a "complaint," commences an "action."  See Fed. R. Civ. P. 3 (discussed below).  Even in those instances where a demand letter is a prerequisite to filing a suit, see e.g. M.G.L. ch. 258, § 4 – and admittedly, Qutab v. Kyani, is not such an instance – the same rule and principle applies – that a complaint commences a suit.  Here, by analogy, a counterclaim may be permissive, even compulsory, see infra, but it is the complaint that initiates the "action."

Second, if Plaintiffs' interpretation of action were correct, it would mean that there were at least two "actions" pending in the instant case: one commenced by Plaintiffs on the filing of the complaint; the second commenced by Bolduc's counterclaim.  This interpretation does not square with conventional usage of the term "action."  For instance, like the Massachusetts Rule

of Civil Procedure 3, cited by Judge Hillman in <u>Qutab v. Kyani</u>, the Federal Rules of Civil Procedure provide that "[a] civil action is commenced by the filing of a complaint with the court." <u>See</u> Fed. R. Civ. P. 3.  Counterclaims, discussed elsewhere, including in Rule 13, attach no similar consequence– the filing of a counterclaim does not commence another civil action. Indeed, the counterclaim (or pleading in which it is alleged) is required to bear the caption and file number of the complaint.  <u>See</u> Fed. R. Civ. P. 10(a).  Elsewhere, for instance in the Uniform Commercial Code, "'[a]ction' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined." U.C.C. §1-201(b)(1) (AM. LAW INST. & UNIF. LAW COMM'N 1977).  This language undermines the Plaintiff's constrained interpretation of "action;" rather it supports the conventional understanding that "action" includes any counterclaims in addition to those claims brought in the complaint.

Third, invoking the prior pending action doctrine here would not serve its purpose of judicial efficiency and avoiding inconsistent judgments.  <u>Curcio v. Hartford Fin. Servs. Group</u>, 472 F. Supp. 2d 239, 243 (Conn. Dist. Ct. 2007) ("The prior pending action doctrine is one of federal judicial efficiency 'to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments'").  The Court's authority to invoke the doctrine for these purposes derives from the Court's inherent power to control its docket. <u>Bradeen</u>, No. 18-CV-11753, 2018 WL 5792319, at *2; <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants").  Hence, the Court is not compelled to take any action, and its determination to do so depends on: "(1) considerations of comity; (2) promotion of judicial

8

efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay." Universal Gypsum of Georgia, Inc. v. Am. Cyanamid Co., 390 F. Supp. 824, 827 (S.D.N.Y. 1975).

In this case, judicial efficiency would not be significantly promoted through a dismissal of Bolduc's counterclaim because Plaintiffs' complaint remains before the Court, meaning that both this Court and the Superior Court would still be considering the same transactions and disputes simultaneously. As Plaintiffs' note in their motion, it is highly inconvenient for the parties to litigate the same claims before two Courts; however, dismissal of Bolduc's counterclaim would not alter that reality. (See Docket # 64). Similarly, because both suits would proceed even if Plaintiffs' motion were granted, the prospect of inconsistent judgments and conflicting determination of fact remain.

Lastly, arguably, Bolduc's counterclaim is compulsory and if dismissed, may be lost. Where a counterclaim is compulsory and a defendant fails to assert it in response to a plaintiff's complaint, that counterclaim may be waived consequently. See Fed. R. Civ. P. 13(a); Eon Labs., Inc. v. SmithKline Beecham Corp., 298 F. Supp. 2d 175, 182 (D. Mass. 2003). According to the First Circuit, a counterclaim is compulsory where any of the following four tests are met:

   (1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
   (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
   (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
   (4) Is there any logical relation between the claim and the counterclaim?

Iglesias v. Mutual Life Ins. Co., 156 F.3d 237, 241 (1st Cir.1998); Eon Labs., Inc. v. Smithkline Beecham Corp., 298 F. Supp. 2d 175, 179 (D. Mass. 2003). While it is not immediately apparent

whether res judicata would bar a subsequent suit on Bolduc's counterclaim absent the compulsory counterclaim rule, many of the issues of fact raised in the Plaintiffs' complaint and Bolduc's counterclaim are the same, much of the same evidence would be presented to refute plaintiffs' claim and to support Bolduc's counterclaim, and because the same situation gave rise to both Plaintiffs' and Bolduc's counterclaim there is a logical relation between them.  Were the Court to apply the prior pending action doctrine to dismiss Bolduc's counterclaim without prejudice so as to allow it to be uniquely considered by the Superior Court, it would be contrary to the intent of compulsory counterclaims.  As explained by the Supreme Court, certain counterclaims are compulsory in order "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."  Southern Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962).

     For these reasons, invoking the prior pending action doctrine here would require an unconventional, if not tortured interpretation of the concept "action"; it would fail to serve the purpose of the prior pending action doctrine of judicial economy and of preventing inconsistent judgments; and might unfairly prejudice Bolduc.  Accordingly, I recommend the motion to dismiss be denied.

**Conclusion**

I recommend that Plaintiffs' motion to dismiss Bolduc's counterclaim. (Docket # 63) be DENIED.[2]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[2] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).