**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| LADDAWN, INC., & LADD LAVALLEE | ) ) ) | CIVIL ACTION |
| Plaintiffs, | ) ) | NO. 4:17-11044-TSH |
| v. | ) ) ) |  |
| MARC D. BOLDUC, | ) ) |  |
| Defendant. | ) ) |  |

## ORDER AND MEMORANDUM ON COSTS, DAMAGES, AND INJUNCTIVE RELIEF

**January 30, 2020**

**HILLMAN, D.J.**

Following his repeated failure to comply with deadlines and discovery orders, this Court entered default judgment against Marc D. Bolduc ("Defendant") on September 6, 2019. (Docket No. 115). Laddawn, Inc. ("Laddawn") and Ladd Lavallee ("Mr. Lavallee") (collectively, "Plaintiffs") now seek costs, damages, and injunctive relief on their claims against Defendant. (Docket No. 122). For the following reasons, the Court grants in part Plaintiffs' motion for costs (Docket No. 118); awards $24,000 in damages on Count I (cybersquatting) and $100,000 in damages on Count II (defamation); and enters a permanent injunction against Defendant.

*1.  Costs*

The Court grants in part Plaintiffs' unopposed motion for costs. Plaintiffs are entitled to $3,719.23[1] under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. (Docket No. 118).

---

[1]  This sum reflects reductions for fees for expediting services ($153.75) and undocumented fees for exemplification and the costs of making copies ($199.80). The Court denies Plaintiffs' motion in so far as it requests these fees.

*2. Statutory Damages*

The Anti-Cybersquatting Consumer Protection Act ("ACCPA"), 15 U.S.C. § 1125(d), prohibits an individual from registering or using a domain name in bad faith. The ACCPA lists nine non-exclusive factors relevant to the bad faith assessment:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

*Id.* § 1125(d)(1)(B)(i).

Seven of the nine factors (specifically, I, II, III, IV, VI, VIII, and IX) weigh in favor of finding bad faith here. Defendant admitted during his deposition testimony that he has no

intellectual property rights in any of the eight domain names[2] he registered. (Docket No. 122-1 at 2). He also admitted that he did not use the domain names to offer any goods or services. (Docket No. 122-1 at 2, 4). He registered the domain names with the sole intent of selling them to Laddawn and third parties for financial gain as retaliation for what he perceived to be his wrongful discharge from the company. (Docket No. 122-1 at 2, 6, 12–20). Given the strength and unequivocal nature of his testimony, the Court finds that Defendant violated § 1125(d) of the ACCPA.

If an individual violates § 1125(d), a plaintiff may recover statutory damages of "not less than $1,000 and not more than $100,000 per domain name." *Id.* § 1117(d). Laddawn requests an award of $10,000 per domain name. But the cases it cites in support involve significantly worse conduct than the Court faces here. For example, in *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087 (S.D. Cal. 2012), where the district court awarded $50,000 per domain name, the defendant continued to use the domain names incorporating registered marks even after the plaintiff obtained a court order finding it to be the rightful owner of the marks. *Id.* at 1116–17. And in *Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150 (W.D. Wash. 2010), *aff'd*, 636 F.3d 501 (9th Cir. 2011), where the district court awarded $100,000 per domain name, the defendant submitted inaccurate interrogatories, engaged in a larger practice of registering domain names of others for profit, and caused actual confusion in the market place. *Id.* at 1170; *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 512 (E.D. Va. 2003) (awarding $100,000 per domain name in statutory damages where the defendant also sold copyrighted materials of the mark owner on the domain). Given the nature of Defendant's scheme, the Court finds the amount of $3,000 per

---

[2] Laddawn.co, Laddawn.biz, Laddawn.org, Laddawn.mobi, Laddawn.info, Laddawn.online, Laddawn.us, and Ladd-dawn.com.

domain name appropriate.  Accordingly, the Court awards $3,000 to Laddawn for each of the eight domain names registered by Defendant in bad faith.

### 3.  *Defamation Damages*

"Damages in a defamation case are limited to actual damages, which are compensatory for the wrong that has been done." *Draghetti v. Chmielewski*, 416 Mass. 808, 815 (1994).  Actual damages include, *inter alia*, "harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 815–16.

Mr. Lavallee seeks an award "rang[ing] between $100,000 and $500,000" for the emotional distress he suffered as a result of Defendant's defamatory statements.  (Docket No. 122 at 2).  Given certain limitations inherent in the evidence he submitted, the Court opts for an award at the lower end of the proposed range.  During the damages hearing before this Court on November 5, 2019, Mr. Lavallee and his sister, Dawn Seiple, testified at length about the emotional toll that Defendant's defamatory statements had on Mr. Lavallee's well-being.  The Court credits this testimony.  But Mr. Lavallee's anguish is only partially tied to Defendant's defamation.  It relates just as much, if not more, to the fear that Defendant would take revenge against Mr. Lavallee and his family.[3]  Moreover, although the Court agrees that Defendant's accusations humiliated Mr. Lavallee and damaged his professional reputation in the community, there is no indication that any of his peers or employees took Defendant's accusations seriously or that his professional relationships suffered.  Under the circumstances, the Court determines that an award of $100,000

---

[3]     Mr. Lavallee, for example, testified to being afraid to leave his house because he did not know what Defendant would do.  But this fear relates to the possibility of revenge rather than the defamatory effect of Defendant's statements.  This conduct, while severe and unsettling, is not compensable as defamation damages.

will adequately and appropriately compensate Mr. Lavallee for the emotional distress caused by Defendant's defamatory statements.

### 4. *Injunctive Relief*

The Court orders that Defendant be permanently restrained and enjoined from:

1. using, attempting to use, selling, attempting to sell, registering or attempting to register any domain name(s) containing the words "Laddawn", "Ladd-dawn", or any derivative of the word "Laddawn."
2. publishing any defamatory, slanderous, and/or libelous statements or writings concerning Mr. Lavallee, including, without limitation:
    a. publishing any book and/or songs that defame and/or are intended to defame Mr. Lavallee in any way; and/or
    b. publishing in any form of social media any writings or statements of any kind that defame and/or are intended to defame Mr. Lavallee in any way;
3. continuing to operate and/or maintain a website entitled "BreakingLadd";
4. entering or attempting to enter the property of Laddawn; and
5. entering or attempting to enter any residence or residential property owned by Mr. Lavallee and/or Dawn Seiple, the former Co-Presidents of Laddawn.

## Conclusion

For the reasons set forth above, the Court grants Plaintiffs' motion for costs in the amount of $3,719.23; awards $24,000 in damages to Laddawn for cybersquatting and $100,000 in damages to Mr. Lavallee for defamation; and enters a permanent injunction enjoining future acts of cybersquatting or defamation and restricting Defendant's access to any property owned by the Plaintiffs.

**SO ORDERED**

                                        ***/s/ Timothy S. Hillman***
                                        **TIMOTHY S. HILLMAN**
                                        **DISTRICT JUDGE**